IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JANAY COBB, *individually and on behalf of all others similarly situated*, | : CIVIL ACTION NO.<br>: 1:19-CV-5833-MLB-JSA |
| Plaintiff, | : |
| v. | : |
| RESURGENT CAPITAL SERVICES, LP, *et al.*, | : |
| Defendants. | : **NON-FINAL REPORT AND**<br>: **RECOMMENDATION ON A**<br>: **MOTION TO COMPEL ARBITRATION** |

Plaintiff Janay Cobb ("Plaintiff" or "Cobb") sues Defendants Resurgent Capital Services, LP ("Resurgent"), LVNV Funding LLC ("LVNV") and "John Does 1–25" for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, pertaining to collection activity on a credit card account. Defendants move to compel arbitration and to dismiss the case based on the arbitration agreement governing the credit card account. Plaintiff argues that the arbitration agreement does not cover claims against Defendants, who are not the original signatories of the agreement or the immediate successors to the signatory.

As explained below, the Court finds in Defendants' favor on the question of arbitrability and therefore **RECOMMENDS** that the Motion to Compel [12] be **GRANTED** and that this case be **STAYED** pending arbitration.

## I. FACTS

The principal facts relied upon by the parties are undisputed. Defendants show, and Plaintiff does not dispute, that Plaintiff opened a credit account (the "Account") with Credit One Bank, N.A. ("Credit One") on April 20, 2015. *See* Herthneck Decl. [12-2] at ¶ 7; Exh. 2 [12-2]; Larsen Decl. [12-3] at ¶ 5. It is also undisputed that Credit One subsequently assigned the Account to MHC Receivables, LLC, which in turn assigned the Account and its receivables through a series of other transactions, by which ultimately Defendant LVNV received assignment of, and currently owns, all rights, title and interest in the Account. *See* Herthneck Decl. [12-2] at ¶¶ 5, 10. The Account is currently serviced by Defendant Resurgent. *Id.* at ¶¶ 1–2.

Upon the opening of the Account, Plaintiff and Credit One entered into a Cardholder Agreement (the "Agreement"). *See* Herthneck Decl. [12-2] at ¶ 12; Exh. 5 [12-2]. The Agreement includes an arbitration clause which begins by stating:

> You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, et seq., and (to the extent State law is applicable), the State law governing this Agreement.

Exh. 5 [12-2] at 42. The Agreement elsewhere defines the term "we" (along with "us," "our," and "Credit One Bank") as "Credit One Bank, N.A., its successors or assigns." *Id.* at 38.

The scope of covered claims subject to arbitration broadly includes any "matters relating to your account," including "collection matters," as well as disputes as to the "application, enforceability or interpretation of this Agreement, including this arbitration provision." *Id.* at 42. The Agreement further states that "[a]ny questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced." *Id.*

## II.   DISCUSSION

### A.   *Standards on a Motion to Compel Arbitration*

The Federal Arbitration Act ("FAA") mandates that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides that a party who is aggrieved by the failure of another party to abide by an arbitration agreement "may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "The court shall hear the parties, and upon being satisfied that the making of the agreement for

arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* After finding that the issue is arbitrable, and upon application of one of the parties, the Court shall stay the district court proceedings until the arbitration has taken place, so long as "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

The purpose of the FAA is "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). Thus, the "FAA compels judicial enforcement of a wide range of written arbitration agreements." *Breletic v. CACI, Inc.-Federal*, 413 F. Supp. 2d 1329, 1334 (N.D. Ga. 2006) (Pannell, J.); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111, (2001). "There is a 'liberal federal policy favoring arbitration agreements,' such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Wiand v. Schneiderman*, 778 F.3d 917, 922 (11th Cir. 2015) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)); *see also Caley*, 428 F.3d at 1359; *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005); *Ruby-Collins, Inc. v. City of Huntsville, Ala.*, 748 F.2d 573, 576 (11th Cir. 1984). Pursuant to that policy favoring arbitration, the FAA mandates that courts "rigorously enforce agreements to arbitrate . . . absent

a countervailing policy manifested in another federal statute." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Moreover, "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).

While the "FAA creates a presumption in favor of arbitrability," it does not require the parties to arbitrate if they have not agreed to do so. *Paladino v. Avnet Comp. Tech., Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998). Thus, under the FAA, a district court must compel arbitration only if an agreement to arbitrate exists. *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 853–54 (11th Cir. 1992) (citing 9 U.S.C. §§ 2, 3). Accordingly, "the question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)).

The Eleventh Circuit has elaborated on the standard that courts must apply when determining the existence of an agreement to arbitrate:

> Observing that a district court's order to arbitrate a contested agreement without benefit of trial is "in effect a summary disposition of the issue of whether or not there ha[s] been a meeting of the minds on the agreement to arbitrate," the Third Circuit has applied the summary judgment standard in deciding what is sufficient evidence to require a

5

> trial on the issue of whether there was an agreement to arbitrate. *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980). Adopting that reasoning, we agree that "[o]nly when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.* at 54. Further, as in the case of any other summary judgment, a district court considering the making of an agreement to arbitrate, "should give to the [party denying the agreement] the benefit of all reasonable doubts and inferences that may arise." *Id.*

*Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785–86 (11th Cir. 2008).

As noted above, the Eleventh Circuit has stated that trial courts are to treat motions to compel arbitration as procedurally akin to summary judgment motions. To obtain summary judgment, "[w]hen the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties in State of Ala.* 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*) (quotations omitted, emphasis in original).

> In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

6

*Id.* It is the *sine qua non* of a summary judgment motion that the Court only considers evidence submitted by the parties, typically in the form of admissible exhibits or testimony reduced to sworn affidavits, declarations or depositions, and not mere allegations or unsworn arguments in legal briefs. *See id.*; LR 56.1B, NDGa.

  B.  *Defendants' Motion to Compel Arbitration*

There is no dispute that a valid contract exists between Plaintiff and Credit One, along with "its successors and assigns," governing the Account. There is also no dispute that the contract includes a valid and enforceable arbitration clause that covers "collections matters" or "any other matters relating to your account," including claims such as those brought here.

What Plaintiff disputes, rather, is whether these Defendants are entitled to invoke the arbitration agreement. Plaintiff argues that her contract was with *Credit One*, not with Defendants LVNV or Resurgent. While Plaintiff does not appear to dispute that LVNV is the current owner, or assignee, of the Account, Plaintiff points out that LVNV received its assignment through intermediary assignees, and not directly from Credit One. Thus, according to Plaintiff, LVNV does not qualify under the contractual definition of "Credit One," because the contractual language limits that definition to Credit One itself, and "***its*** successors and assigns." Exh. 5 [12-2] at 38 (emphasis added). Plaintiff argues that the reference to Credit One and "***its***" successors and assigns should be interpreted as excluding any subsequent assignee

7

who did not receive its assignment directly from Credit One itself. As for Resurgent, which is the servicer on the account, Plaintiff argues that this Defendant is not even arguably an assignee and does not purport to be a party to the Agreement.

Defendants argue that the arbitration clause of the Agreement covers Plaintiff's claims against them. LVNV argues that as an assignee, and successor-in-interest to Credit One's rights and obligations vis-à-vis the Account, it is within the scope of the definition of "Credit One," "we" and "us" and thus is entitled to invoke the arbitration clause. Defendants also argue that the arbitration clause covers the claims against the servicer, Resurgent. Because the Complaint alleges joint and concerted misconduct by both entities, Defendants argue that the claims fall within the contractual language that includes claims against any "affiliated company," and any claims "for which we [i.e., Credit One or its assignees or successors] may be directly or indirectly liable …." Exh. 5 [12-2] at 43. Further, Defendants argue that the claims against Resurgent should be deemed to be subject to arbitration on grounds of equitable estoppel and/or on third-party beneficiary theories.

More basically, however, Defendants argue that the Court should not reach any of these arguments. Defendants point out that the arbitration clause delegates to the arbitrator any disputes as to the "application, enforceability or interpretation of this Agreement, including this arbitration provision." *Id.* The arbitration agreement also allows for either the rules of the American Arbitration Association ("AAA") or

the Judicial Arbitration and Mediation Service ("JAMS") to apply, and Defendants point out that both sets of rules broadly provide arbitrators the power to determine contractual interpretation, enforceability, and jurisdiction.

The Court addresses these issues below beginning with the threshold question of which forum is to address these gateway issues of contractual interpretation.

1. Arbitrability of Plaintiff's Contractual Arguments

While arbitrability is presumptively a question for the Court, this presumption can be modified by contract. As the Supreme Court has stated, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). To delegate issues of arbitrability to the arbitrator, the parties must clearly and unmistakably show their intent to do so by including an express delegation clause in the arbitration agreement. *Id.* at 72.

In *Rent-A-Center*, the Supreme Court found such clear and unmistakable intent based on a delegation clause giving "the arbitrator exclusive authority to resolve any dispute relating to the . . . enforceability . . . of [the] [a]greement." *Id.* at 71 (internal quotation omitted). The Eleventh Circuit has enforced delegation clauses with similar wording. *See, e.g.*, *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1263 (11th Cir. 2017) (delegation clause provided that "[t]he Arbitrator, and not any

federal, state, or local court or agency, shall have authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable."); *Johnson v. Keybank Nat'l Ass'n*, 754 F.3d 1290, 1292 (11th Cir. 2014) (delegation clause provided that "[a]ny Claim shall be resolved . . . by binding arbitration" and defined a "Claim" as "any claim, dispute, or controversy between you and us arising from or relating to this Agreement . . . including, without limitation, the validity, enforceability, or scope of this Arbitration Provision or this Deposit Account Agreement.").

Here, the arbitration clause delegates all disputes between Plaintiff and "Credit One" regarding "the application, enforceability [and] interpretation of this Agreement" to "mandatory, binding arbitration." Exh. 5 [12-2] at 42. The Court agrees with Defendants that this constitutes a clear and unmistakable delegation clause akin to those in the above-cited cases. Further, the Agreement explicitly incorporates the rules of the AAA and JAMS as governing any arbitration initiated under this Agreement, between Plaintiff and "Credit One." Because those rules, in turn, provide that the arbitrator has the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement, the incorporation of these rules also delegates most issues of

arbitrability to the arbitration tribunal. *See, e.g.*, *Shea v. BBVA Compass Bancshares, Inc.*, No. 1:12-cv-23324-KMM, 2013 WL 869526, at *4 (S.D. Fla. Mar. 7, 2013).

Nevertheless, the existence of a delegation clause does not necessarily mean that the courts retain no gateway role. It remains that the scope of issues delegated to the arbitrator is limited by the terms of the agreement itself. Many courts have been particularly reluctant to delegate disputes as to whether a *non-party* to an arbitration agreement can compel or be compelled to submit to arbitration, absent express delegation language to that effect. After all, "[i]n order to decide whether arbitration of arbitrability is appropriate, a court must first determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 209 (2d Cir. 2005); *see Lavigne v. Herbalife, Ltd.*, -- F.3d --, 2020 WL 4342671, at *5 (11th Cir. July 29, 2020) (the arbitrability of claims involving non-parties was for the court to decide, despite a delegation clause, because the delegation clause only clearly delegated disputes as to arbitrability between the contractual parties themselves).[1]

---

[1] While many courts have refused to delegate the arbitrability of a non-party's claims, some courts have delegated such disputes under a delegation clause. *See, e.g.*, *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017) (stating that "third-party beneficiary theories, waiver and estoppel," are "'background principles' of state contract law," the determination of which are also subject to submission to an arbitration panel pursuant to a sufficiently-broad delegation clause) (quoting *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014)). Different cases may yield different decisions

The application of these principles here is more complex than in some cases. LVNV purports to be an express contractual party—as the successor to Credit One's rights and obligations under the Account. LVNV thus argues that it can compel arbitration of the claims not only against it, but also against its agent, Resurgent, based on language allowing "Credit One" to compel arbitration of claims asserted against other persons or entities in certain circumstances. *See* Exh. 5 [12-2] at 42 ("Claims subject to arbitration include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors or successors (and the employees, officers and directors of all of these entities), but also Claims for which we may be directly or indirectly liable, even if we are not properly named at the time the Claim is made."). Whether LVNV in fact qualifies under the contractual definition of "Credit One," and whether it can thereby also force arbitration of the joint claims against itself and Resurgent under the above-quoted language, are matters that require construction and interpretation of the contract itself. These matters are for the arbitrator to decide in this case.

Complicating matters, however, Resurgent also appears to alternatively argue that it is entitled to move to compel on its own, despite Resurgent's own acknowledged lack of contractual party status. Resurgent argues that regardless of

---

because the arbitrability of any gateway disputes is inherently specific to the contractual language at issue in that case.

LVNV's status and contractual rights, Resurgent should be able to enforce the arbitration clause itself on third-party beneficiary theories and/or equitable estoppel.

The Court does not find that the Agreement clearly and unmistakably delegates determinations as to the rights of *non-parties* to the arbitrator. The arbitration clause states simply that "***You and we*** agree that ***either you or we*** may, without the other's consent, require that any controversy or dispute ***between you and us*** (all of which are called "Claims"), be submitted to mandatory, binding arbitration." Exh. 5 [12-2] at 42 (emphasis added). This language does not expressly provide for any entity other than "You" (i.e., Plaintiff) or "we" (i.e., "Credit One") being able to submit a dispute under the Agreement to arbitration. While some additional pseudo-contractual rights might accrue under principles of state law to non-parties based on third-party beneficiary or other status, the Court cannot find that the parties "clearly and unmistakably" delegated all gateway determinations of such rights to the arbitrator. Rather, the gateway disputes as to arbitrability that are clearly and unmistakably subject to the delegation clause are solely those between "You" and "we."

Thus, in sum, the Court cannot adjudicate, and must compel arbitration to resolve, any gateway disputes as to whether LVNV is a proper contractual party and, if so, whether LVNV can also compel arbitration of the claims involving joint, concerted conduct against itself and Resurgent. However, the Agreement does not

13

delegate to the arbitrator the question of whether a non-party in Resurgent's position could otherwise—and in the alternative—invoke the arbitration clause by itself, based on third-party beneficiary theories and/or estoppel. Because the latter question is unnecessary to address, and may never be relevant depending on the arbitrator's findings on the first question, the Court does not find it proper to proceed further in that analysis. In the event that the arbitrator finds that LVNV is not a proper contractual party as a successor or assign to Credit One, or that LVNV/"Credit One" is not contractually entitled to compel arbitration of the jointly asserted claims against itself and Resurgent, then the parties should be able to return to this Court to address any remaining issues of arbitrability of any non-party claims under third party beneficiary and/or estoppel theories.

        2.        Disposition of this Case

As explained above, the Motion to Compel Arbitration [12] should be granted. Defendant also requests dismissal of this case in favor of arbitration. The FAA, however, speaks only of the court's authority to stay a judicial case upon granting a motion to compel arbitration. *See* 9 U.S.C. § 3. Courts in this district have dismissed cases where a binding arbitration clause clearly applies, upon finding that no circumstances exist by which the case could be brought or allowed to proceed in federal court. *See, e.g.*, *Neuburger v. Xerox State & Local Sols., Inc.*, No. 1:14-CV-3598-TCB-JCF, 2015 WL 13651666, at *5 (N.D. Ga. Apr. 20, 2015), *report & rec.*

*adopted by* 2015 WL 13651667 (N.D. Ga. May 15, 2015); *Caley v. Gulfstream Aerospace Corp.*, 333 F. Supp. 2d 1367, 1379 (N.D. Ga. 2004), *aff'd*, 428 F.3d 1359 (11th Cir. 2005). This is not such a case, however. The Court has made no findings as to the arbitrability of any substantive claim, because the arbitrability of the claims are primarily for the arbitration tribunal to decide as explained above. The arbitration tribunal could decide against LVNV's contractual right to force arbitration, in which case the case would be permitted to proceed again in this Court. Thus, dismissal is clearly inappropriate at this juncture. The case, rather, should be **STAYED** pending arbitration.

The Court further **RECOMMENDS** that any stay order include a requirement by the parties to update the Court as to the status of arbitration every **three (3) months** starting from the date of the stay order, and also within **fourteen (14) days** of any final order on the merits or any other order on the issue of arbitrability, and that a failure to supply such updates would be a basis for the Court to dismiss this case for lack of prosecution without further order, without prejudice to any results of the arbitration proceeding.

### III. RECOMMENDATION

Thus, as explained in more detail above, the Motion to Compel Arbitration [12] should be **GRANTED** and this case should be **STAYED** pending arbitration, with specific directions as to required status updates.

**IT IS SO RECOMMENDED** this 11th day of August, 2020.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE